**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOHNNY BLANCHARD,

                    Petitioner

               - v -                          Civ. No. 9:02-CV-0081
                                               (LEK/RFT)

JAMES J. WALSH,

                         Respondent.

**APPEARANCES:**                                **OF COUNSEL:**

JOHNNY BLANCHARD
Petitioner, *pro se*
95-A-8651
Sullivan Correctional Facility
P.O. Box 116
Fallsburg, New York 12733-0116

HON. ELIOT SPITZER                        STEVEN H. SCHWARTZ, ESQ.
Attorney General of the State of New York      Assistant Attorney General
Office of the Attorney General–Albany Division
The Capitol
Albany, New York 12224-0341

**RANDOLPH F. TREECE**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION and ORDER

     In 1995, *pro se* Petitioner Johnny Blanchard was convicted of four counts of second degree

murder and two counts of second degree burglary. Petitioner presently seeks an order granting his

Application for a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254. Dkt. No. 5, Am. Pet. In

support of his Amended Petition, Blanchard asserts that his conviction is invalid and should be

vacated because: (1) his oral and written admissions to the authorities, which were utilized against

him at trial, were obtained in violation of Blanchard's Fifth Amendment right against self-

incrimination; (2) his statements to the authorities were obtained in violation of Blanchard's Sixth

Amendment right to counsel; (3) the trial judge improperly prevented a witness from testifying for

the defense; (4) he was denied his constitutional right to be tried by a jury of his peers; and (5) the trial judge improperly allowed an "unauthorized and unconsented recorded conversation" into evidence.[1]  *Id*.  For the reasons that follow, this Court recommends that the Amended Petition be **denied**.

## I. BACKGROUND

### A. State Court Proceedings

According to the testimony adduced at trial, at approximately 2:00 p.m., on July 3, 1994, Calvin LeBarron went to see his mother-in law, Josephine Zurek, at her apartment on Second Street in the city of Albany, New York.  *See* Transcript of Trial of Johnny Blanchard (1/16/96) ("Trial Tr.") at pp. 214-15.  LeBarron rang the doorbell to Zurek's apartment, however, she did not open the door.  Trial Tr. at p. 214.  Upon discovering that Zurek had not yet taken her mail into her home, LeBarron became concerned and entered Zurek's home through a rear door.  *Id*. at pp. 214-15. Inside the home, LeBarron discovered Zurek's body, as well as that of Walter Paszkowski, laying lifeless on the kitchen floor.  *Id*. at p. 216.  LeBarron immediately called the police and reported the incident.  *Id*. at pp. 216-17.

Detective Louis Renna of the Albany Police Department was directed to respond to the homicide at Zurek's residence, and arrived at the scene of the crime at approximately 3:00 p.m.  *Id*. at p. 223.  At that time, Detective Renna noticed blood on both the refrigerator and certain walls in the apartment, as well as a blood-covered cane and a blood-stained pot, both of which Detective Renna suspected might have been used to kill the victims.  *Id*. at pp. 229-34.  Additionally, the

---

[1] This matter has been referred to this Court for the issuance of a report and recommendation pursuant to 28 U.S.C. 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3(c).  *See also* FED. R. CIV. P. 72(b).

pockets of the pants Paszkowski was wearing at the time he was killed were turned inside out, which indicated to Detective Renna that Paszkowski had been robbed. *Id*. at p. 233. The search of the crime scene also revealed the presence of a wallet containing Blanchard's social security card in a bedroom in Zurek's apartment. *Id*. at p. 274.

The trial testimony also revealed that on the morning of July 3, 1994, Blanchard arrived at the apartment of an acquaintance, James White, carrying a television set and a bag of jewelry. *Id*. at pp. 324-25. Blanchard asked White if he knew of anyone who might be able to sell those items, and, when asked by White where he had obtained them, Blanchard responded "you don't want to know." *Id*. at p. 325-26.[2]

On July 5, 1994, Detective Dennis Bradt of the Albany Police Department was directed to apprehend Blanchard for violating the terms of his probation. *Id*. at pp. 455-56. At approximately 10:00 p.m. that same day, Detective Bradt observed Blanchard walking down the staircase of a home on Second Street in Albany, New York. *Id*. at p. 456. When Detective Bradt called out Blanchard's name, Blanchard attempted to flee. *Id*. at pp. 456-57. Detective Bradt succeeded in apprehending Blanchard and, as he was being handcuffed, Blanchard blurted out "Why are you chasing me? I didn't hurt anybody." *Id*. at p. 458. Blanchard was then brought to the Albany Police Department and Albany Police Detective Bernard Santandrea was assigned to question him. *Id*. at pp. 467-68. At that time, Detective Santandrea read Blanchard his *Miranda* rights[3] from a card issued to him by the District Attorney's office. *Id*. at pp. 469-70. Blanchard then informed Detective Santandrea that he was addicted to crack cocaine and spent all of his money on that drug.

---

[2] Both the television set and jewelry were later determined to have belonged to Zurek. Trial Tr. at pp. 374-76.

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

*Id*. at p. 473.  The following morning, Detective Anthony Bruno of the Albany Police Department

met with Blanchard.  *Id*. at pp. 530-31.  After a period of time, Blanchard stated that he wished to

call his girlfriend, Peretta Jackson.  *Id*. at p. 532.  Detective Bruno then called Jackson, informed her

that Blanchard wished to speak with her, and stated that if she agreed to speak with him the

authorities would record that telephone call.  *Id*. at p. 533.  Jackson agreed to that arrangement (*Id*.

at p. 163), and she and Jackson thereafter engaged in a telephonic conversation that was recorded by

law enforcement agents (*Id*. at pp. 534-35).[4]  After speaking with Jackson, Blanchard informed

Detective Bruno that Blanchard wished to provide the authorities with a statement.  *Id*. at p. 538.

He was once again informed of his *Miranda* rights, and, after waiving those rights, claimed that

during the early morning hours of  July 2, 1994, after having smoked crack cocaine and consumed

alcohol, he entered Zurek's apartment.  *Id*. at pp. 538-45.  Blanchard further stated that he became

involved in an altercation with the home's occupants, during which he hit "anything that moved."

*Id*. at p. 546.  After leaving the apartment, Blanchard stated that he fell asleep and when he awoke

the next day he smoked some crack.  *Id*.  On the morning of July 4, 1994, Blanchard read a

newspaper article apparently related to the homicides, which caused Blanchard to "realize[] what

[he] had done."  *Id*. at p. 547.  Blanchard "started drinking again" and then went to a park where he

"just sat there thinking."  *Id*.  Blanchard stated that he "didn't want to believe it [himself]," but after

speaking with Jackson, Blanchard "realize[d] that [he] just couldn't bear to keep this inside."  *Id*.

He then decided to "make good" for his actions, and express his remorse concerning what had

transpired.  *Id*.

---

[4] Portions of that recorded conversation were played to the jury during the course of Blanchard's trial.  Trial Tr. at pp. 534-37.

On July 22, 1994, Blanchard was indicted by an Albany County grand jury.  *See* Indictment No. 940785 (7/22/94) ("Indictment").  In that accusatory instrument, Blanchard was charged with six counts of second degree murder and two counts of second degree burglary.[5]  *See* Indictment at pp. 1-8.  Beginning on January 3, 1995, the Honorable Thomas A. Breslin, Albany County Court Judge, conducted a suppression hearing to determine, *inter alia*, whether the prosecution would be precluded from using Blanchard's statements to the authorities as evidence at his trial.[6]  Following that hearing, Judge Breslin issued a Decision and Order denying Blanchard's suppression motion in all respects.  *See People v. Blanchard*, No. 14-4243 (Alby. Cty. Ct. Oct. 16, 1995) ("October 1995 Order") (reproduced in Record on Appeal ("Record") at pp. R. 51-65).

Blanchard was tried before a jury as to the foregoing charges, with Judge Breslin presiding. After the prosecution rested its case against Blanchard, defense counsel sought permission to call Darryl McCorkle as a defense witness.  Trial Tr. at pp. 778-79.  In explaining the basis for his request to call McCorkle, Blanchard's counsel noted that McCorkle had declared in an affidavit that at approximately 9:00 a.m. on July 3, 1994, the police had brought him in for questioning about a murder that had occurred on Second Street in Albany.[7]  *Id*. at pp. 782-87.  Since the proposed

---

[5] Two of the six murder charges accused Blanchard of the intentional murder of Paszkowski and Zurek, two of the charges alleged that Blanchard, under circumstances evincing a depraved indifference to human life, recklessly engaged in conduct which led to the victims' deaths, and the remaining two counts of murder charged Blanchard with causing their death while committing a felony.  *See* Indictment.

[6] The suppression hearing was conducted over the course of five different days – January 3, 1995, March 10, 1995, March 24, 1995, March 28, 1995, and April 3, 1995.  The transcripts of the January 3rd, March 10th, and March 24th proceedings each begin on page number one.  Therefore, this Court will refer to the transcript of the January 3rd hearing as "Suppression Tr., Vol. I", the transcript of the suppressing hearing conducted on March 10th as "Suppression Tr., Vol. II," and the remaining transcripts relating to the suppression hearing as "Suppression Tr., Vol., III."

[7] A police report created at the time McCorkle was questioned by the authorities indicated that when asked by the police to state his name, McCorkle purportedly responded "I'm not telling.  I've done a murder."  Trial Tr. at p. 780. When asked in what city he had committed that crime, McCorkle responded "No man.  I'm only kidding."  *Id*. at p. 781.

testimony was inconsistent with the prosecution's claim that the bodies of the murder victims were first discovered during the afternoon of July 3, 1994 (*Id*. at pp. 214-16), Blanchard's counsel argued that he should be permitted to call McCorkle to impeach LeBarron's testimony regarding the time when the victims were first discovered (*Id*. at p. 791). Judge Breslin denied that request, concluding that the testimony the defense sought to elicit from that witness, that is the time at which the bodies were found, would be offered for impeachment purposes only regarding a collateral fact of the criminal case and was therefore not admissible. *Id*. at p. 795. Blanchard thereafter presented to the jury his defense to the charges. *Id*. at pp. 797-847. After deliberating, the jury found Blanchard not guilty of the intentional murder of Zurek, but guilty of her depraved indifference murder. *Id*. at pp. 1044-45. The jury also found Blanchard guilty of the intentional murder of Paszkowski as well as the felony murder of both victims. *Id*. at pp. 1045-46. Blanchard was also convicted of both second degree burglary charges. *Id*. at pp. 1046-48.

On December 6, 1995, Blanchard appeared before Judge Breslin for sentencing and was sentenced to a term of twenty-five (25) years to life on the intentional murder conviction, a consecutive term of twenty-five (25) years to life on the depraved indifference murder conviction, and two additional prison terms of twenty-five (25) years to life on the felony murder convictions, to run concurrently with the intentional and depraved indifference murder sentences. *See* Resp't App. at p. R.A. 47. The trial court also imposed sentences of five (5) to fifteen (15) years imprisonment on each of the second degree burglary convictions, which were ordered to run consecutive to each other and consecutive to the sentences imposed on the murder convictions. Resp't App. at pp. R.A. 47-48.

Blanchard appealed his convictions and sentences to the New York State Supreme Court,

Appellate Division, Third Department, alleging, through counsel, that: (1) the trial court improperly allowed Blanchard's oral and written statements to the authorities into evidence in violation of his Fifth Amendment rights; and (2) his oral and written statements were obtained by the police in violation of Blanchard's Sixth Amendment right to counsel. *See* Appellate Brief (4/13/00). Blanchard also filed a supplemental *pro se* appellate brief in which he claimed that: (1) the admission into evidence of certain photographs was unduly prejudicial; (2) Judge Breslin improperly precluded defense counsel from calling McCorkle as a defense witness; (3) Blanchard was deprived of his right to a jury trial of his peers due to the racial composition of the jury; and (4) the admission into evidence of the audiotape of the telephone call between Blanchard and Jackson deprived him of his right to a fair trial. *See* Supplemental *Pro Se* Appellate Brief (8/9/00). The Third Department affirmed the convictions and sentences in all respects. *People v. Blanchard*, 718 N.Y.S.2d 722 (N.Y. App. Div., 3d Dep't 2001). Leave to appeal that decision to the New York State Court of Appeals was subsequently denied. *People v. Blanchard*, 754 N.E.2d 206 (N.Y. 2001). Petitioner thereafter commenced this action on January 22, 2002. Dkt. Nos. 1, Pet., 5, Am. Pet., 14, Traverse, & 15, Mem. of Law.[8]

## II. DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110

---

[8] Since Blanchard's Original Petition failed to comply with Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts, the Honorable Lawrence E. Kahn, United States District Judge, directed Petitioner to submit an amended petition if he wished to proceed with his action; Blanchard thereafter filed an Amended Petition, which was approved by this Court. Dkt. No. 4, Order directing compliance; Dkt. No. 5, Am. Pet.; Dkt. No. 8, Order approving Amended Petition and directing service. As this Court noted in its April 2002 Order, Blanchard's Amended Petition refers to a memorandum of law that was stricken from the docket of this action. *See* Am. Pet. at pp. 5-6; Dkt. No. 8 at pp. 2-3. Therefore, this Court has only considered the supporting memorandum of law filed by Blanchard on June 29, 2002 (Dkt. No. 15) in conjunction with his Amended Petition as support for his *habeas* claims.

Stat. 1214 (1996) ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim:

> that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).

The AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Boyette*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

## B.  Review of Blanchard's Claims

### *1.  Fifth Amendment Right*

In his first ground, Blanchard argues that Judge Breslin improperly allowed Petitioner's oral and written statements to the authorities into evidence at Blanchard's trial. Am. Pet., Ground One. Petitioner contends that the ruling constituted error because he only waived his right to counsel after

*-8-*

Detective Bruno falsely claimed that the Public Defenders' Office ("PDO") "did not open until 9:00 a.m.," and the police had assured Blanchard that he did not need to consult with an attorney. Dkt. No. 15, Pet'r Mem. of Law at pp. 2-3. Blanchard alleges that while he was being questioned by the authorities, he "request[ed] . . . a lawyer repeatedly," but was told that he did not need one. *Id*. at p. 2. Petitioner further alleges that the "critical factor" which led to him to waive his *Miranda* rights was Detective Bruno's "false statement" that the PDO was not open at the time Blanchard claims to have requested that he be represented by someone from that office. *Id*. at pp. 2-3. Petitioner argues that his *Miranda* waiver "was procured as a direct result of a false statement by the officer," and that Detective Bruno's claim regarding the unavailability of the PDO "increased rather than decreased the pressures inherent in the interrogation room." *Id*. at p. 3.

Under *Miranda v. Arizona*, 384 U.S. 436 (1966), before a suspect may properly be subjected to custodial interrogation, he must be informed that he has the right to remain silent, that any statement he makes may be used in evidence against him, and that he has the right to have counsel present. 384 U.S. at 467-72; *see also Dickerson v. United States*, 530 U.S. 428, 435 (2000) (citing *Miranda*). In considering whether a party has voluntarily provided a statement to the police, courts are to consider the "totality of the circumstances," including, *inter alia*, evidence of police coercion, the length of the interrogation, the defendant's maturity and education, and whether the police failed to advise the defendant of his rights to remain silent and to have counsel present during the custodial interrogation. *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).[9] *Miranda* also renders inadmissible any statements given to authorities that have been induced by trickery or deception.

---

[9] A coerced or otherwise involuntary statement may never be used for any purpose. *Mincey v. Arizona*, 437 U.S. 385, 398 (1978) (stating that "*any* criminal trial use against a defendant of his involuntary statement is a denial of due process of law" (citations omitted) (emphasis in original)).

*Berkemer v. McCarty*, 468 U.S. 420, 433 (1984) (citing *Miranda*).

In denying Blanchard's motion to suppress, Judge Breslin found that Blanchard's post-apprehension comment to Detective Bradt, wherein he volunteered that he had not "hurt anybody," was admissible at trial because it constituted Blanchard's spontaneous declaration. *See* Oct. 1995 Order at p. 12. Judge Breslin also found that Blanchard's oral statements were provided to the authorities after Blanchard had "knowingly and intelligently waived his [*Miranda*] rights." *Id*. at p. 13. Judge Breslin further found that Blanchard's written statement, taken by Detective Bruno, was "voluntarily made beyond a reasonable doubt." *Id*. at p. 14.[10]

In rejecting Blanchard's appellate challenge to the admissibility of his statements based upon the alleged violation of Blanchard's Fifth Amendment right against self-incrimination, the Appellate Division found "no basis to disturb County Court's . . . findings that certain of defendant's statements were spontaneous utterances . . . and were . . . admissible." *Blanchard*, 718 N.Y.S.2d at 724 (internal citations omitted). The Third Department further determined that the record supported the trial court's findings that Blanchard had made his other statements to law enforcement agents voluntarily, and concluded that "under the totality of the circumstances, [the trial court] did not err in determining that defendant's statements were voluntarily made after a knowing, voluntary and intelligent waiver of his constitutional rights." *Id*. (internal quotations and citations omitted).

Petitioner has not established that Detective Bruno misled him regarding the availability of the PDO at the time he was being questioned, nor has Blanchard otherwise demonstrated that his statements were induced by either trickery or deception. To prevail on a claim of trickery or

---

[10] Judge Breslin found that although Blanchard may have been drinking at the time he made his statements, Blanchard "was not intoxicated or under the influence of any drugs or other substances" at the time of his statements. Oct. 1995 Order at p. 14.

deception, Blanchard "must produce clear and convincing evidence that the [police] affirmatively misled [the petitioner] . . . . [and] that the misrepresentations materially induced the [petitioner] to make incriminating statements." *United States v. Mitchell*, 966 F.2d 92, 100 (2d Cir. 1992) (internal quotation and citations omitted); *United States v. Patterson*, 2002 WL 31890950, at *6 (S.D.N.Y. Dec. 27, 2002) (citing *Mitchell*) (other citation omitted).  In support of this claim, Petitioner has not submitted any – much less clear and convincing – evidence that law enforcement agents misled or deceived Blanchard at the time he was being questioned by the police.  The Court notes that the statement Petitioner attributes to Detective Bruno regarding the time at which the PDO would be available was not alleged by appellate counsel to be untrue.  *See* App. Br. at pp. 9-10.  Also, Petitioner has not established in this action that the statement regarding the hours of operation of the PDO at that time was, in any way, false or misleading.

The only record support for Blanchard's claim regarding Detective Bruno's statement is found in Blanchard's own testimony at the suppression hearing.  Specifically, the transcript of that hearing reveals the following colloquy between Blanchard's counsel and Petitioner regarding his alleged request for counsel at the time he was being interviewed by the police:[11]

> Q:   Well, without identifying which officer said what, do you recall if you received a response to your inquiry as to why you were [in the police station]?
> A:   No, I don't.
> Q:   Well, what happened next?
> A:   They started questioning me.
> Q:   About what?
> A:   In reference to a murder on Second Street.
> Q:   And what, if anything, did you respond to that question?
> A:   When they started asking me about the murder, I said I would like to speak to a lawyer.

---

[11] Blanchard testified that the questioning began at approximately 10:00 p.m. on July 5, 1994.  Suppression Tr., Vol. I. at p. 55.

Q:     And what response, if any, did you get to that request for a lawyer?
A:     They told me I didn't need one, and they told me that the Public Defender's
       Office didn't open until 9 o'clock in the morning, anyway.

Suppression Tr., Vol. III at p. 60.

At the suppression hearing, the police officers testified that Blanchard agreed to freely speak

with them without an attorney being present after he had been advised of his *Miranda* rights.  *See*

Suppression Tr., Vol. I at pp. 19-20, 30, & 89-90.  Law enforcement agents further testified at that

proceeding that Blanchard never requested that counsel be present while he was being questioned

about the homicides.  *See id.* at pp. 68-69 & 89-90; Suppression Tr., Vol. II at p. 14.  In his October

1995 Order denying the motion to suppress, Judge Breslin acknowledged Blanchard's testimony

that, at the time he was questioned by law enforcement agents, he had "repeatedly asked for a

lawyer."  Oct. 1995 Decision at p. 10.  However, Judge Breslin does not appear to have found that

testimony credible as he specifically stated that he had afforded "full credence" to the police

officers' testimony at the suppression hearing and that such testimony was irreconcilable with

Petitioner's version of what transpired at the time he was being questioned by the authorities.  *Id.* at

p. 14.

This Court has reviewed the transcripts of the suppression hearing, and, based upon that

review, we conclude that the trial court properly allowed Blanchard's statements to the authorities

into evidence.  Specifically, although Blanchard was questioned by the police for approximately

thirteen hours before he provided the written statement implicating himself in the homicides (Trial

Tr. at p. 562), the record establishes that Blanchard was provided sodas and cigarettes during that

period of time, as well as food on at least two occasions (Oct. 1995 Order at pp. 2-4).  Furthermore,

Blanchard has not established that his maturity or education casts doubt on the voluntary aspect of

his statements.  Finally, the credible evidence at both the suppression hearing and criminal trial

support the state courts' findings that Blanchard knowingly, intelligently and voluntarily waived his

*Miranda* rights.  *See*, *e.g.*, Suppression Tr., Vol. I at pp. 19-20, 30, & 89-90; Trial Tr. at pp. 538-48.

Under the AEDPA, a state court's factual findings at a suppression hearing are presumed to

be correct, and the petitioner has the burden of overcoming that presumption  by clear and

convincing evidence.  *See Sorto v. Herbert*, 2004 WL 2852358, at *2  (E.D.N.Y. Dec. 13, 2004)

(citing 28 U.S.C. § 2254(e)(1)); *James v. Walker*, 2003 WL 22952861, at *6 (E.D.N.Y. Aug. 28,

2003), *aff'd*, 2004 WL 2496742, at *6 (2d Cir. 2004) (unpublished opinion).[12]  After reviewing the

state court record and the submissions of the parties, this Court concludes that Petitioner has not

demonstrated that Judge Breslin erred in denying Blanchard's suppression motion or that the

Appellate Division wrongfully denied this aspect of his appeal.  Therefore, this Court recommends

that the first ground in Blanchard's Amended Petition be **denied**.

### 2. Sixth Amendment Right

Petitioner claims in his second ground that his statements to the police were obtained in

violation of Blanchard's Sixth Amendment right to counsel.  Am. Pet., Ground Two.  In support of

this claim, Blanchard argues that Detective Bruno knew that Petitioner was represented by an

attorney with regard to a charge that he had violated the terms of his probation, but that Detective

Bruno never asked Blanchard for the name of his attorney nor afforded Petitioner the opportunity to

call his attorney on the day he was questioned by law enforcement agents.  Pet'r Mem. of Law at p.

1.  Petitioner argues that because the police were aware that Blanchard was represented by counsel

---

[12] However, "ultimately legal questions, such as whether a defendant has effectively waived his federal
constitutional rights in a proceeding, are governed by federal standards."  *Oyague v. Artuz*, 393 F.3d 99, 104 (2d Cir.
2004) (citation omitted).

regarding the probation violation charge, "all questioning or interrogation [of Blanchard] was impermissible." *Id.* at p. 4.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  In explaining the parameters of this right, the Supreme Court noted in *McNeil v. Wisconsin*, 501 U.S. 171 (1991), that

> [t]he Sixth Amendment right [to counsel] . . . is offense specific.  It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.

501 U.S. at 175 (citations and internal quotations omitted); *see also Texas v. Cobb*, 532 U.S. 162, 172-73 (2001) (citation omitted).

Thus, before formal criminal proceedings are initiated, a suspect in a criminal investigation has no constitutional right to the assistance of counsel. *Davis v. United States*, 512 U.S. 452, 456 (1994) (citing *United States v. Gouveia*, 467 U.S. 180, 188 (1984)).  Accordingly, a defendant's statements regarding offenses for which he has not been formally charged are admissible notwithstanding the attachment of his Sixth Amendment right to counsel on other, unrelated, charged offenses. *Texas v. Cobb*, 532 U.S. at 168 (citing *McNeil v. Wisconsin*, 501 U.S. at 176).

The trial court specifically found that, at the time Blanchard was questioned by the police, Blanchard was ***not*** represented by counsel on the unrelated probation violation charge.  Oct. 1995 Order at p. 13.  Judge Breslin concluded that since "no attorney-client relationship existed" between Blanchard and the PDO (or any other attorney) at the time of that questioning by the police, his right to counsel was not violated when he was questioned by law enforcement agents about the homicides. *Id.*

-14-

In denying Blanchard's appeal challenging the admission of his statements to the authorities on Sixth Amendment grounds, the Appellate Division determined that pursuant to New York law, Blanchard's right to counsel had "indelibly attached on the violation of probation charge when [that charge] was filed with the court and the arrest warrant issued." *Blanchard*, 718 N.Y.S.2d at 724 (citations omitted). However, that court specifically noted that,

> the pendency of that charge did not, by itself, bar the police from questioning [Blanchard] on the unrelated murders since the record does not establish that defendant was actually represented or had requested counsel on the violation of probation charge. . . . Accordingly, we conclude that [Blanchard's] statements were not admitted in violation of his constitutional right to counsel.

*Id*. at 824-25 (citations omitted).

With the exception of Blanchard's unsubstantiated claim that Detective Bruno knew that Petitioner was represented by an attorney concerning the probation violation charge, Petitioner has not provided any basis for this Court to conclude that his right to counsel was violated when he was questioned by the authorities about whether he had been involved in the murders of Paszkowski or Zurek.[13]  Moreover, even if Detective Bruno had been aware that Blanchard was represented by counsel on the probation violation charge, Petitioner has not established that his ***Sixth Amendment*** right to counsel – as opposed to any right to counsel created by the State of New York – was violated because his statements to the police concerning the homicides were allowed into evidence. Specifically, the Court notes that although under New York state law, a defendant who is represented by an attorney cannot be questioned in the absence of counsel even when the questioning relates to a matter other than that for which the defendant is charged, *see Hurd v. Stinson*, 2000 WL 567014, at *12 n.12 (S.D.N.Y. May 10, 2000) (citations omitted), as noted above,

---

[13] Detective Bruno never indicated, either at the suppression hearing or during the criminal trial, that he knew Blanchard was represented by an attorney regarding the probation violation charge.

the right to counsel under the Sixth Amendment is ***offense specific***.  *See Texas v. Cobb*, 532 U.S. at

168 (citing *McNeil v. Wisconsin*, 501 U.S. at 176); *see also Rivera v. Conway*, 350 F. Supp. 2d 536,

548 (S.D.N.Y. 2004) (citations omitted); *United States v. Santiago*, 3 F. Supp. 2d 392, 395

(S.D.N.Y. 1998) (citation omitted).  Thus, "the New York right to counsel is clearly much broader

than the federal right to counsel."  *Hurd v. Stinson*, 2000 WL 567014, at *12 n.12.  Blanchard has

never claimed that he was represented by counsel concerning the homicide charges at the time he

was questioned by law enforcement agents.  Thus, Petitioner has not established that he suffered any

Sixth Amendment violation when he was questioned by the police about the homicides.

Blanchard has not demonstrated that the Third Department's denial of his appellate claim

that his incriminating statements were obtained in violation of his Sixth Amendment right to

counsel is either contrary to, or represents an unreasonable application of, the above-referenced

Supreme Court precedents.  Therefore, this Court recommends that the second ground in

Blanchard's Amended Petition be **denied**.

### 3.  Preclusion of Defense Witness

In his third ground, Petitioner argues that the trial court improperly prevented Blanchard's

trial attorney from calling McCorkle as a defense witness.  Specifically, Blanchard claims that

McCorkle's comment that he had recently committed a murder, coupled with his claim that the

authorities were purportedly aware of the homicide at Second Street by 9:00 a.m. on July 3, 1994,

establishes that McCorkle's testimony could have "challenge[d] . . . the thoroughness of the police

investigation as well as their credibility."  Pet'r Mem. of Law at p. 8.  Respondent argues that this

aspect of Blanchard's Petition is without merit.  Dkt. No. 13, Resp. Mem. of Law at pp. 5-7.[14]

"The right to present evidence is, of course essential to the fair hearing required by the Due Process Clause." *Jenkins v. McKeithen*, 395 U.S. 411, 429 (1969) (citing, *inter alia*, *Morgan v. United States*, 304 U.S. 1, 18 (1938)).  This right is "particularly fundamental" in the context of criminal proceedings.  *Jenkins*, 395 U.S. at 429.  Moreover, the right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right.  *Taylor v. Illinois*, 484 U.S. 400, 408-09 (1988).  However, evidentiary rulings by state courts are not ordinarily subject to federal *habeas* review unless they deprive a defendant of a fair trial.  *Estelle v. McGuire*, 502 U.S. 62, 72-75 (1991) (citing *Lisenba v. California*, 314 U.S. 219, 228 (1941) (federal courts can only review claims of evidentiary error to determine if admission of the evidence "so infused the trial with unfairness as to deny due process of law")).

With respect to McCorkle's comment about committing a murder, the trial court determined that the proposed testimony was inadmissible because the proffer was only relevant to a collateral fact – the time the victims were found to have been murdered – and not the issue of whether Petitioner had committed the homicides.  Trial Tr. at p. 795.  The Third Department denied Blanchard's appeal challenging the trial court's decision to prevent the defense from calling McCorkle as a witness.  Specifically, the Third Department stated,

---

[14] Although this claim was not raised in Blanchard's application for leave to appeal to the Court of Appeals, and therefore, was not fully exhausted by Petitioner in the state courts, the Respondent has not argued that this ground must be dismissed due to Petitioner's failure to exhaust his state court remedies.  *See* Resp. Mem. of Law at pp. 5-7. Therefore, it would be improper for this Court to recommend, *sua sponte*, the dismissal of this claim on this procedural basis.  *E.g.*, *Acosta v. Artuz*, 221 F.3d 117, 121 (2d Cir. 2000) (courts should generally not raise *sua sponte* nonjurisdictional defenses not raised by the parties); *Klem v. Brunelle*, 1999 WL 603824, at *2 n.3 (W.D.N.Y. Aug. 9, 1999) (exhaustion requirement applicable to *habeas* petitions is not jurisdictional but rather a principle of comity) (citation omitted).  Accordingly, this Court has not *sua sponte* considered whether a ground raised by Petitioner in the present action might be procedurally barred because it was not fully exhausted by him in the state courts.

> in the absence of any evidence of alibi, the issue of when the bodies were discovered had no direct bearing on any issue in the case other than the credibility of Calvin LeBarron, Zurek's son-in-law.  The matter was, therefore, collateral. . . . Since McCorkle's testimony was proffered solely to impeach the credibility of Le Barron as to this collateral issue, it was properly excluded . . . .

*Blanchard*, 718 N.Y.S.2d at 725 (citations omitted).

This Court must therefore consider whether the above findings are contrary to, or represent an unreasonable application of, the above-referenced Supreme Court precedents.

Initially, the Court notes that Blanchard's claim that the trial court's ruling precluding defense counsel from calling McCorkle as a witness was detrimental to his defense appears to overlook the fact that at the criminal trial, McCorkle's counsel indicated to Judge Breslin that if McCorkle was called as a witness to testify at trial about his alleged statement that he had recently committed a murder, McCorkle would have invoked his Fifth Amendment right against self-incrimination.  Trial Tr. at pp. 793-94.  Therefore, it is unclear to this Court how the trial court's ruling was detrimental, in any way, to Blanchard's defense to the criminal charges against him.

Additionally, this Court finds that the trial court properly precluded Blanchard from allowing McCorkle to testify about that statement merely to impeach the credibility of LeBarron regarding the time at which the victims were discovered.  A trial judge has "wide discretion" when ruling on the admissibility of proposed testimony that would impeach the credibility of a witness by the use of evidence that is collateral to the charges against a defendant.  *See Jacobson v. Henderson*, 765 F.2d 12, 15-16 (2d Cir. 1985); *Savastano v. Hollis*, 2003 WL 22956949, at *17 (E.D.N.Y. Oct. 10, 2003) (citations omitted).  Furthermore, the use of extrinsic evidence to impeach witnesses on collateral matters is generally prohibited in criminal matters.  *See Calderon v. Keane*, 2003 WL 22097504, at *3 (S.D.N.Y. Sept. 9, 2003) (citation omitted).

In the underlying criminal action, it is clear that the time at which the victims were discovered was collateral to the issue of whether Blanchard had killed them.  Further, as the Third Department correctly noted, Blanchard never presented evidence at his trial regarding an alibi that would place any significance concerning the time at which the bodies of the victims were found.  Accordingly, McCorkel's impeachment testimony on this issue was properly excluded by the trial court.  *E.g. Brown v. Costello*, 2003 WL 118499, at *8 (S.D.N.Y. Jan. 13, 2003) (denying petitioner's request for *habeas* relief claiming error on part of trial court in refusing to allow collateral matter into evidence and holding that proposed evidence "had no bearing whatsoever on establishing petitioner's guilt beyond a reasonable doubt").

Blanchard has failed to establish that the Appellate Division's decision denying this aspect of his appeal is contrary to, or an unreasonable application of, the Supreme Court precedent referenced above.[15]  The Court therefore recommends that the third ground in the Amended Petition be **denied**.

### 4.  *Right to Jury of One's Peers*

In his fourth ground, Blanchard argues that the prosecution improperly utilized its peremptory challenges to strike the remaining black jurors from the pool, thereby forcing Blanchard "to go to trial with an all white jury." Am. Pet., Ground Four.  Petitioner additionally contends in this ground that African-Americans were under-represented on the panel from which his petit jury was ultimately selected, in violation of his constitutional rights.  *Id.*  Such claims are based upon the

---

[15] Moreover, even if the state courts had erred in denying Blanchard's request to call that witness at trial, any such error was necessarily harmless beyond a reasonable doubt under *Chapman v. California*, 386 U.S. 18 (1967) in light of McCorkle's representation at trial that he would have invoked his Fifth Amendment right against self-incrimination if called as a defense witness.  *See* Trial Tr. at pp. 793-94.

Supreme Court's decision in *Batson v. Kentucky*, 476 U.S. 79 (1986), wherein the Supreme Court held that the purposeful exclusion of jurors based upon race violates the Equal Protection Clause of the Constitution.  476 U.S. at 84.

Respondent argues that Blanchard did not exhaust his *Batson* claim regarding the prosecution's use of peremptory challenges because Petitioner did not assert this argument at the time of his trial.  Resp. Mem. of Law at pp. 7-9.  Respondent further argues that Petitioner's claim regarding the composition of the jury panel from which the petit jury was selected is without merit. *Id*. at pp. 9-10.

### a. Prosecution's Use of Peremptory Challenges

It is well settled that all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of *habeas corpus*.  *See* 28 U.S.C. § 2254(b)(1)(A); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997); *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991); *Daye v. Attorney General of New York*, 696 F.2d 186, 190 (2d Cir. 1982) (en banc); *Glover v. Bennett*, 1998 WL 278272, at *1 (N.D.N.Y. May 21, 1998).  The exhaustion doctrine recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions."  *Daye v. Attorney General of the State of New York*, 696 F.2d at 191. Though both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law.  *Id*.  "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court."  *Glover v. Bennett*, 1998 WL 278272, at *1 (quoting *Daye*, 696 F.2d at 192) (footnote omitted); *see also Shaut v. Bennet*, 289 F. Supp. 2d 354, 359  (W.D.N.Y. 2003)

(quoting *Daye*).

Although appellate counsel sought leave to appeal the Appellate Division's decision affirming Blanchard's conviction and sentence, counsel did not refer to any *Batson* claim in that leave application.  *See* Dkt. No. 16.  To satisfy the exhaustion requirement, a petitioner must have asserted all of the claims for which federal *habeas* review is sought in his application for leave to appeal to the New York Court of Appeals.  *See Galdamez v. Keane*, 394 F.3d 68, 74-75 (2d Cir. 2005) (citations omitted); *see also Bennett v. Artuz*, 285 F. Supp. 2d 305, 311 (E.D.N.Y. 2003) (citing *Grey v. Hoke*, 933 F.2d at 119); *Shanks v. Greiner*, 2001 WL 1568815, at *3 (S.D.N.Y. Dec. 10, 2001) ("In New York, [the exhaustion doctrine] requires that a petitioner seek leave to appeal to the New York Court of Appeals by submitting an application that explicitly sets forth each federal claim.").  Moreover, where a party only refers to certain claims in his application for leave to appeal, federal courts may properly consider the grounds not raised in such application to be procedurally barred.  *Galdamez v. Keane*, 394 F.3d at 74-75; *Snead v. Artuz*, 2001 WL 199409, at *4 (S.D.N.Y. Feb. 28, 2001).  Thus, Blanchard has not exhausted the *Batson* claim raised in his fourth ground for relief.[16]

When a claim has not been fully exhausted in the state courts, a federal court may find that there is an absence of available state remedies "if it is clear that the unexhausted claim is

---

[16] Although Respondent correctly notes that Blanchard did not assert a *Batson* challenge to the prosecution's use of peremptory challenges at the time of trial, he incorrectly argues that such failure, standing alone, constitutes a failure to exhaust that claim.  Resp. Mem. of Law at p. 7.  The failure to raise a *Batson* challenge prior to the jury being sworn does not amount to a failure to exhaust that claim but rather constitutes a procedural bar to such a claim under New York's Criminal Procedure Law ("CPL").  *E.g.*, *McCrory v. Henderson*, 82 F.3d 1243, 1249 (2d Cir. 1996) ("[T]he failure to object to the discriminatory use of peremptory challenges prior to the conclusion of jury selection waives the objection."); *see also Caston v. Costello*, 74 F. Supp. 2d 262, 268 (E.D.N.Y. 1999) (for a *Batson* claim to be timely, the objection must be made before the jury is sworn) (citing *People v. Harris*, 542 N.Y.S.2d 411,411-12 (N.Y. App. Div, 4th Dep't 1989)).  Blanchard appears to have raised his *Batson* claim in his supplemental *pro se* appellate brief.  *See* Supplemental *Pro Se* Appellate Brief at pp. 3-4.

procedurally barred by state law and, as such, its presentation in the state forum would be futile."
*Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir.
1997)); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000).  Therefore, this Court must determine
whether it would be futile for Blanchard to present his *Batson* claim in the state courts.

Blanchard cannot now seek leave from New York's Court of Appeals as to his *Batson* claim
because his application for leave to appeal has already been denied by that court, and he may not
properly file a second application seeking leave from that court.  *See Williams v. Goord*, 277 F.
Supp. 2d 309, 316 (S.D.N.Y. 2003) (a criminal defendant may file only one application for leave to
appeal to New York Court of Appeals) (citing New York Court Rule § 500.10(a); *Bossett v. Walker*,
41 F.3d 825, 829 (2d Cir. 1994)); *see also People v. Spence*, 619 N.E.2d 644 (N.Y. 1993).  Thus,
Blanchard's *Batson* claim is "deemed exhausted" for purposes of his *habeas* application.  *Spence v.
Superintendent Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *Senor v. Greiner*,
2002 WL 31102612, at *10 (E.D.N.Y. Sept. 18, 2002).  Although this claim is "deemed exhausted,"
it is procedurally defaulted.  *See Aparicio v. Artuz*, 269 F.3d at 90 (citing *Coleman v. Thompson*,
501 U.S. 722, 735 n.1 (1991)).  Accordingly, this Court's review of that claim is conditioned upon
Blanchard demonstrating both cause for his procedural default and resulting prejudice, or
alternatively, that a fundamental miscarriage of justice would occur absent federal court review.[17]
*See St. Helen v. Senkowski*, 374 F.3d 181 (2d Cir. 2004) ("In the case of procedural default
(including where an unexhausted claim no longer can proceed in state court), [federal courts] may
reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual

---

[17] A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the
conviction of one who is actually innocent."  *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002).

prejudice, or that he is actually innocent.'") (quoting *Bousley v. United States*, 523 U.S. 614, 622

(1998)); *King v. Greiner*, 210 F. Supp. 2d 177, 182 (E.D.N.Y. 2002) (court is precluded from

considering unexhausted claims "unless petitioner can establish cause to excuse the default and

prejudice, or actual innocence") (citations omitted).

   To establish "cause," a petitioner must show that some objective external factor impeded his

ability to fully exhaust his federal claim. *See Coleman v. Thompson*, 501 U.S. at 753; *Restrepo v.*

*Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Doleo v. Reynolds*, 2002 WL 922260, at *3 (S.D.N.Y. May

7, 2002). Examples of external factors include "interference by officials," ineffective assistance of

counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on

direct appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Bossett v. Walker*, 41 F.3d 825, 829

(2d Cir. 1994) (citing *Murray*); *Lovacco v. Stinson*, 2004 WL 1373167, at *3 (E.D.N.Y. June 11,

2004) (citing *Murray*).[18]

   Blanchard has not alleged any cause for his failure to assert the above claim in his

application for leave to appeal, and has never alleged, in the state courts or in this proceeding, that

his appellate attorney rendered ineffective assistance of counsel by failing to include the *Batson*

claim in the leave application counsel filed with the Court of Appeals. Since Petitioner has not

provided any legal cause for his failure to exhaust this claim, it is unnecessary for this Court to

consider whether he was prejudiced by the default, because federal *habeas* relief is generally

unavailable as to procedurally defaulted claims unless **both** cause and prejudice are demonstrated.

*See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *McLeod v. Moscicki*, 2003 WL 22427757, at

---

[18] However, "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman v. Thompson*, 501 U.S. at 752-53 (citations omitted).

*8 (S.D.N.Y. Oct. 22, 2003) (citing *Murray*, 477 U.S. at 494); *You v. Bennett*, 2003 WL 21847008, at *7 (E.D.N.Y. July 29, 2003) (citing *Coleman*, 501 U.S. at 750); *Pou v. Keane*, 977 F. Supp. 577, 581 (N.D.N.Y. 1997). Additionally, this Court's review of the state court record demonstrates that Blanchard is not actually innocent of any of the crimes of which he was convicted. Therefore, the Court recommends that this aspect of Blanchard's fourth ground for relief be **denied** on this procedural basis.

### b. Racial Composition of Jury Pool

Blanchard also argues in his fourth ground that he was denied his right to a fair trial because African-Americans were under-represented on the jury panel from which his petit jury was ultimately selected. Am. Pet., Ground Four. In support of this claim, Blanchard refers this Court to the supplemental *pro se* appellate brief he filed in the context of his direct appeal. *Id.*. In that brief, Blanchard argued that at the time of his trial, 19% of the population of the City of Albany was comprised of African-Americans. Supplemental *Pro Se* Appellate Brief at p. 3. He then argued that because only eight of the one hundred and thirty jury panel members – or 6.2% – were African-American, he was deprived of Sixth Amendment right to be tried by a jury of his peers. Supplemental *Pro Se* Appellate Brief at p. 3. Respondent claims that this aspect of Blanchard's Amended Petition is without merit. Resp. Mem. of Law at pp. 9-10.

The Sixth Amendment guarantees a criminal defendant a jury selected from a fair cross section of the community, *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975), and a claim of discrimination regarding the selection of the jury venire may be brought under that Amendment, *Duren v. Missouri*, 439 U.S. 357, 364-68 (1979). To establish a violation of this provision of the Sixth Amendment, a party must prove that: (1) the excluded group is "distinctive" in the

community; (2) the representation of such group in the jury pool is neither fair nor reasonable in relation to the number of members of the group in the community; and (3) the under-representation of the members in the group is the result of "systematic exclusion" of the group in the jury selection process. *Duren v. Missouri*, 439 U.S. at 364.

Prior to the commencement of Blanchard's trial, the trial court conducted a hearing concerning this claim, at which the Albany County Commissioner of Jurors testified regarding the means by which the jury venire from which Blanchard's petit jury was drawn was obtained. Trial Tr. at pp. 36-45. Following that testimony, Judge Breslin concluded that there was "absolutely no proof" presented by Blanchard's counsel that the lack of African-Americans in the jury venire was the result of any process by which members of that group were systematically excluded from the jury pool. *Id*. at p. 48. Therefore, Judge Breslin denied Blanchard's challenge to the racial composition of the jury venire. *Id*. at p. 49. In denying this aspect of Blanchard's appeal, the Third Department similarly found no merit in Blanchard's claim that he was denied his right to be tried by a jury of his peers. *Blanchard*, 718 N.Y.S.2d at 725. Therefore, this Court must determine whether those findings are contrary to, or an unreasonable application of, *Taylor* and its progeny.

Initially, the Court notes that African-Americans are clearly members of a "distinctive" group in the community for purposes of this test. *United States v. Jackman*, 46 F.3d 1240, 1246 (2d Cir. 1995) (citations omitted); *United States v. Johnson*, 21 F. Supp. 2d 329, 334 (S.D.N.Y. 1998) (noting that "courts have held that blacks . . . are [a] 'distinctive' group[] in the community").

In considering the second factor, courts are to determine whether the distinctive group is "significant[ly] underrepresent[ed]" in the jury selection process. *Jackman*, 46 F.3d at 1246 (citation omitted); *Johnson*, 21 F. Supp. 2d at 334 (citing *Jackman*) (other citation omitted). The

relevant comparison in this regard is typically a comparison between the number of minority

persons in the population and the number of persons belonging to the class found in the jury pool.

*Jackman*, 46 F.3d at 1246 (citations omitted).  Following the trial court's hearing relating to this

issue, Judge Breslin found "arguable" Blanchard's claim that a substantial and identifiable segment

of the African-American community was not included in the relevant jury pool.  Trial Tr. at p. 48.

This Court assumes, *arguendo*, that the trial court's comment that Blanchard had arguably

demonstrated that a substantial and identifiable segment of the African-American community had

not been included in the jury venire indicates that Blanchard established the second *Duren* factor.

However, both the trial court and the Appellate Division noted that Blanchard had not

sustained his burden of establishing that African-Americans had been systematically excluded from

the jury pool.  *See* Trial Tr. at p. 48; *Blanchard*, 718 N.Y.S.2d at 725.  Petitioner did not present any

evidence in the state court – or in this action – which demonstrates that the claimed under-

representation of African-Americans from the jury pool at his trial was the result of systematic

exclusion of that group in the jury selection process.  The failure to establish this final *Duren* factor

is fatal to this aspect of Petitioner's Amended Petition.  *E.g.*, *United States v. Lara*, 181 F.3d 183,

192 (1st Cir. 1999) (noting that because the "*Duren* test is conjunctive – the proponent of a fair

cross-section claim must satisfy all three of its elements – either of these failings suffices to defeat

the . . . claim[]"); *United States v. Allen*, 160 F.3d 1096, 1103 (6th Cir. 1998) ("*Duren* and its

progeny make crystal clear that a defendant's *prima facie* case includes all three elements listed

above, and each must be established before the government is required to justify an infringing

selection procedure."); *see also Johnson*, 21 F. Supp. 2d at 337 (denying claim that selection of

grand and petit juries violated the Sixth Amendment despite fact that petitioner "easily [met] the

*-26-*

first of the three *Duren* factors required to establish a prima facie violation of the Sixth

Amendment" since petitioner failed to establish the second and third factors discussed in *Duren*).

Since Petitioner has not provided any proof supporting his claim that the under-

representation of the number of African-American jurors from the jury venire was the result of

systematic exclusion of that group in the jury selection process, this Court finds that the Third

Department's decision denying this aspect of Blanchard's appeal is neither contrary to, nor

represents an unreasonable application of, the above-referenced Supreme Court precedents.

Accordingly, the Court recommends that this aspect of Blanchard's fourth ground for relief be

**denied**.

### 5. *Admission of Recorded Conversation*

In his fifth and final ground, Petitioner argues that Judge Breslin improperly allowed the

"unauthorized and unconsented recorded conversation" between he and Jackson into evidence.  Am.

Pet. at (attached) p. 5a.[19]  Respondent argues that this claim should be dismissed because Petitioner

had a full and fair opportunity to litigate this issue in the state courts below.  Resp. Mem. of Law at

pp. 10-11.

A government's activities in electronically listening to and recording an individual's

conversation constitutes a "search and seizure" within the meaning of the Fourth Amendment.  *Katz*

*v. United States*, 389 U.S. 347, 353 (1967); *see also Acevedo v. Greiner*, 2001 WL 1382585

(S.D.N.Y. Nov. 6, 2001) (claim challenging wiretap of telephone implicates Fourth Amendment).

However, "where the State has provided an *opportunity* for full and fair litigation of a Fourth

Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas

---

[19] Blanchard improperly labels his fifth ground for relief as "Ground Three."  Am. Pet. at (attached) p. 5a

corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (emphasis in original) (citing *Stone v. Powell*, 428 U.S. 465, 481-82 (1976)); *see also Quick v. Allard*, 2004 WL 2326376, at *2 (E.D.N.Y. Oct. 12, 2004) (citing *Stone*); *McPherson v. Greiner*, 2003 WL 22405449, at *15-16 (S.D.N.Y. Oct. 22, 2003) (citations omitted).  The Second Circuit has noted that federal review of Fourth Amendment claims in federal *habeas* petitions may only be undertaken in one of two instances: (1) if the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (2) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.  *Capellan v. Riley*, 975 F.2d at 70 (citation omitted); *Quick v. Allard*, 2004 WL 2326376, at *2 (citing *Capellan*); *McPherson v. Greiner*, 2003 WL 22405449, at *16; *Williams v. Dufrain*, 2002 WL 975304, at *8 (N.D.N.Y. Apr. 19, 2002) (citation omitted).

New York State has provided an opportunity for defendants to fully and fairly litigate Fourth Amendment claims.  *See* N.Y. CRIM. PROC. LAW § 710; *Capellan v. Riley*, 975 F.2d at 70 n.1; *Jackson v. Lacy*, 74 F. Supp. 2d 173, 176 (N.D.N.Y. 1999).  Specifically, under the CPL, a criminal defendant may move to suppress evidence he believes was unlawfully or improperly acquired if he "has reasonable cause to believe that such [evidence] may be offered against him in a criminal action."  *See* N.Y. CRIM. PROC. LAW § 710.20.

In the underlying criminal action, the trial court conducted a suppression hearing to determine, *inter alia*, whether the recorded conversations between Jackson and Blanchard could be utilized against him at his trial.  *See* Suppression Tr., Vols. I-III.  At that hearing, Blanchard's counsel extensively questioned Jackson about the recorded telephone conversations between she

*-28-*

and Blanchard.  *E.g.*, Suppression Tr., Vol III at pp. 35-45.  On appeal, Blanchard challenged the

trial court's evidentiary ruling allowing that recording into evidence, *see* Supplemental *Pro Se*

Appellate Brief at pp. 4-5, however the Appellate Division denied this aspect of the appeal, finding

"no error in County Court's refusal to suppress defendant's recorded telephone conversations with

Jackson . . . ."  *Blanchard*, 718 N.Y.S.2d at 725.

This Court's review of the transcripts of the suppression hearing uncovers no evidence that

the trial court failed to conduct a reasoned method of inquiry into the relevant questions of fact and

law concerning Blanchard's suppression motion.  Additionally, this Court concurs with the findings

of the Appellate Division that evidence relating to the recorded telephone conversations between

Blanchard and Jackson were properly allowed into evidence against Petitioner.  For all of these

reasons, this Court recommends that the fifth ground in the Amended Petition **denied**.  *See*

*Capellan*, 975 F.2d at 70 (citation omitted); *McPherson*, 2003 WL 22405449, at *16; *Martinez v.*

*Senkowski*, 2000 WL 888031, at *7 (N.D.N.Y. June 28, 2000).[20]

**WHEREFORE**, based upon the above, it is hereby

**RECOMMENDED**, that Blanchard's Amended Petition be **DENIED and DISMISSED**;

and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties by regular mail.

**NOTICE**: Pursuant to 28 U.S.C. § 636(b)(1), the parties have **TEN (10) DAYS** in which to

file written objections to the foregoing report-recommendation.  Any objections shall be filed with

---

[20] The Court further notes that "[t]he express or implied consent of one participant in a [recorded] conversation is sufficient to satisfy the requirements of . . . the Fourth Amendment." *United States v. Heatley*, 994 F. Supp. 483, 490 (S.D.N.Y. 1998).  Since Jackson clearly consented to the recording of the telephone conversation between she and Blanchard, Blanchard's Fourth Amendment claim must fail for this reason as well. *See* Trial Tr. at p. 163.

the Clerk.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

FED. R. CIV. P. 6(a), 6(e) and 72.

Dated:  April 25, 2005
        Albany, New York